ORIGINAL

AO 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>CARLOS ALEXANDRE VIANA GROSSI | DOCKET NO.<br><br>MAGISTRATE CASE NO.<br>19MJ01844<br><br>FILED<br>CLERK U.S. DISTRICT COURT<br>MAY -2 2019<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY                    DEPUTY |

Complaint for violation of Title 21, United States Code, Section 841(a)(1)

| NAME OF MAGISTRATE JUDGE<br>THE HONORABLE MICHAEL R. WILNER | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>April 30, 2019 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[21 U.S.C. §§ 841(a)(1)]

On or about April 30, 2019, in Los Angeles County, within the Central District of California, defendant CARLOS ALEXANDRE VIANA GROSSI knowingly possessed with intent to distribute a controlled substance.

LODGED
2019 MAY -2 AM 11:
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**JORGE MARRON**<br>OFFICIAL TITLE<br>Special Agent – Homeland Security Investigations |
|---|---|
| Sworn to before me and subscribed in my presence, | |
| SIGNATURE OF MAGISTRATE JUDGE[1]<br>MICHAEL R WILNER | DATE<br>May 2, 2019 |

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA Claire E. Kelly x3868         REC: Detention

**AFFIDAVIT**

I, Jorge Marron, being duly sworn, hereby declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against CARLOS ALEXANDRE VIANA GROSSI ("GROSSI") for a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. TRAINING AND EXPERIENCE

3. I am a Special Agent ("SA") with the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") and have been so employed since May 2018. I am a graduate of the Federal Law Enforcement Training Centers, in Glynco, Georgia, and Artesia, New Mexico. I was trained in, among other things, criminal investigative techniques, immigration, customs, and extraterritorial laws. Prior to my employment with HSI, I was a Deportation Officer with ICE Enforcement and Removal Operations

1

("ERO"), from February 2018 to May 2018. My duties included, among other things, interviewing suspected undocumented aliens to determine nationality, admissibility, or deportability. I was a Patrol Agent with the United States Border Patrol from July 2012 to February 2018. My duties include detecting immigration law violations, and apprehending suspected human smugglers, controlled substance traffickers, and undocumented aliens. I am presently assigned to the Assistant Special Agent in Charge Los Angeles International Airport ("LAX"). As part of my current assignment, I am charged with investigating drug-related violations.

### III. SUMMARY OF PROBABLE CAUSE

4. On or about April 30, 2019, Transportation Security Administration ("TSA") officers at LAX in Los Angeles, California, discovered two pieces of luggage belonging to GROSSI that each contained a concealed package of suspected cocaine. The total weight of the two cocaine packages was approximately 2.6 kilograms. GROSSI initially denied knowledge of what was in the luggage. GROSSI later told law enforcement that someone had given him the luggage to transport from Brazil to Australia. GROSSI said that in exchange for his service, GROSSI -- who is an attorney -- would receive cases for his legal practice.

### IV. STATEMENT OF PROBABLE CAUSE

5. Based on my personal involvement, and my conversations with TSA officers, Los Angeles Airport Police Department ("LAXPD") officers, Customs and Border Protection ("CBP") officers, witnesses, and other HSI SAs, I know the following:

**A.   SUSPECTED DRUGS FOUND IN GROSSI'S CHECKED BAGGAGE**

6.   On or about April 30, 2019, TSA Officer Herrera was using x-ray equipment to screen checked luggage, including luggage that was checked onto a flight bound for Sydney, Australia.  He reviewed an x-ray image of a yellow checked suitcase, with bag tag number 4016873030 (the "yellow bag"), and noticed an anomaly.  Specifically, Officer Herrera noticed a mass between the handle of the bag and the bag lining.  In Officer Herrera's experience, this mass was unusual because normally that area of the bag would be empty.  He notified his supervisor that the yellow bag needed further inspection. Officers reviewed the bag tag, which contained the flight number and GROSSI's name.

7.   TSA Officers John Huljev and Charles Moore conducted a further exam on the yellow bag.  While examining the yellow bag, Officer Moore opened the liner of the bag and saw that there was black duct tape on an inner panel of the suitcase.  Due to concerns that the yellow bag might contain explosives, officers notified Transportation Security Specialists Explosives ("TSSE") Officer James Becker that a bag containing a suspicious mass was discovered at Terminal 7.  TSSE Officer Becker responded and determined the mass was not explosives.  TSA Supervisor Willton then contacted LAXPD via dispatch.

8.   LAXPD Officer Valle responded to Terminal 7 and pulled back the inner panel of the yellow bag and found a black rectangular package inside clear plastic wrapping.  Officer Valle removed the package from the yellow bag to further

investigate. LAXPD Officer Shamblin also responded and contacted the LAXPD/Drug Enforcement Administration ("DEA") Task Force. DEA Task Force Officer ("TFO") Michael Woodard contacted HSI.

9.  I responded to Terminal 7 at approximately 7:00 p.m. and made contact with LAXPD Officers Valle and Shamblin and DEA TFO Michael Woodard. TSA told me that there was a second checked bag associated with GROSSI through the bag tag. This bag was a blue suitcase bearing bag tag number 4016873164 (the "blue bag").

10. I opened the blue bag and inspected its contents. Once the bag was empty, I inspected the bag itself, and opened the liner of the bag. Behind the liner, I saw a black inner panel covering the entire bottom of the blue bag. I noticed the panel had a piece of tape on one edge and excess glue on the opposite edge of the plate. I removed the tape and pulled the panel forward, revealing a package similar to the one found in the yellow bag. The package was black and rectangular and covered in a clear plastic wrapping. I lifted the package out of the blue bag. I contacted CBP to further inspect the packages found in the blue bag and the yellow bag.

11. CBP arrived and opened one of the packages to conduct a field test of the substance inside the package. When CBP pulled some of the substance out of the package I saw a white powdery substance. The substance presumptively tested positive for cocaine. CBP later field-tested the substance of that package again, and field-tested the substance of the other

4

package as well. The substances in the two packages from the yellow and blue bags presumptively tested positive for cocaine. The total combined weight of both packages was approximately 2.6 kilograms.

12. GROSSI was a ticketed passenger aboard a flight departing from LAX to Sydney out of Gate 74 in Terminal 7 on April 30, 2019. CBP officers encountered GROSSI as he was entering the jetway at Gate 74. GROSSI said he was traveling alone and had checked two bags, one blue and one yellow. GROSSI confirmed that he had packed the bags himself and that everything in the bags belonged to him. CBP detained GROSSI and transported him to the Tom Bradley International Terminal for further inspection.

### B.   INTERVIEW OF GROSSI

13. On May 1, 2019, at approximately 12:09 a.m., I read GROSSI his statement of Miranda rights out loud in English. Because GROSSI is a Brazilian national and speaks Portuguese and English, LAXPD Officer Valle, who is fluent in Portuguese, translated the statement of Miranda rights to GROSSI in Portuguese. GROSSI acknowledged he fully understood the information read to him regarding the statement of rights and signed a waiver of rights form. GROSSI agreed to speak with HSI SA Rafael Torres and me. Agents asked GROSSI if he felt comfortable conducting the interview in English and GROSSI opted to proceed in English. During the interview, GROSSI provided the following information:

        a.   GROSSI stated he resides in Brazil and is a practicing attorney.

        b.   GROSSI claimed he had been planning a trip for approximately three years to travel from Brazil to England, stay a few days in England then travel to Australia for a few days. GROSSI said his travel plans included layovers in Portugal and the United States.

        c.   GROSSI initially stated he was not aware of any contraband in his luggage. GROSSI said that he purchased luggage about five days before he departed from Brazil. While in London, GROSSI returned to his hotel one day to find his luggage had been opened and items were out of place. GROSSI claimed he inspected the luggage and the luggage had not been tampered with. GROSSI said he was the only person to pack his bags, and other than when he left the hotel, the bags were always in his presence. Eventually, agents ended the interview with GROSSI and released him to CBP for further processing.

14. After the interview and while being processed by CBP, GROSSI began speaking with the HSI agents again, including myself. GROSSI admitted that someone in Brazil gave him both suitcases (the yellow and blue bags) to take on the trip that he had planned. GROSSI agreed to transport the bags to Australia. GROSSI was told that someone would contact him in Australia.

15. GROSSI said that, as payment for transporting the luggage, he was going to receive business referrals from the individuals in the form of cases, due to GROSSI being an attorney.

## V. TRAINING AND EXPERIENCE ON DRUG OFFENSES

16. Based on my training and experience and familiarity with investigations into drug trafficking conducted by other law enforcement agents, I know the following:

    a. Drug trafficking is a business that involves numerous co-conspirators, from lower-level dealers to higher-level suppliers, as well as associates to process, package, and deliver the drugs and launder the drug proceeds. Drug traffickers often travel by car, bus, train, or airplane, both domestically and to foreign countries, in connection with their illegal activities in order to meet with co-conspirators, conduct drug transactions, and transport drugs or drug proceeds.

    b. Drug traffickers often maintain books, receipts, notes, ledgers, bank records, and other records relating to the manufacture, transportation, ordering, sale and distribution of illegal drugs. The aforementioned records are often maintained where the drug trafficker has ready access to them, such as on their cell phones and other digital devices.

    c. From my training and experience, I know that Los Angeles is a major hub for drug distribution. Drugs come in to Los Angeles from overseas, and are then distributed across the country. LAX is commonly used for drug transportation by drug trafficking organizations, who send couriers through to LAX with drugs in their luggage. Numerous drug arrests are made at LAX every year, with couriers transporting drugs in a similar matter.

## VI. **CONCLUSION**

17. Based on the foregoing facts and opinions, and on my training and experience, I believe that there is probable cause to believe that GROSSI violated Title 21, United States Code, Section 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

_____
Jorge Marron, Special Agent
Homeland Security
Investigations

Subscribed to and sworn before me
this ___ day of May, 2019.

_____
HONORABLE MICHAEL R. WILNER
UNITED STATES MAGISTRATE JUDGE